## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

**LEONARD SHARP,**

              **Petitioner,**

**v.**                                        **Case No. 1:16-cv-00020**


**B.J. JOHNSON, Warden,**
**FCI McDowell**

              **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1); motion to amend/supplement the petition,[1] (ECF No. 16); motion for emergency ruling on the petition, (ECF No. 17); motion to seal, (ECF No. 18); motion to expedite, (ECF No. 21); and motion for disposition, (ECF No. 22). Respondent filed a response to the petition, requesting dismissal of this action. (ECF No. 12). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Petitioner is clearly not entitled to relief; therefore, the undersigned **RECOMMENDS** that Petitioner's § 2241 petition and

---

[1] The title of this document is "Motion to Relate back to initial Pleadings in a 28 U.S.C. § 2241 Habeas Corpus Proceeding Pursuant to Fed. Civ. P. [sic] Rule 15(c)."

1

pending motions be **DENIED**, Respondent's request for dismissal be **GRANTED**, and this matter be **DISMISSED**, with prejudice, from the docket of the Court.

## I.   Relevant Factual and Procedural Background

Petitioner Leonard Sharp is an inmate at the Federal Correctional Institution ("FCI") McDowell in Welch, West Virginia with a scheduled release date of March 13, 2017. *See* https://www.bop.gov/inmateloc. On July 23, 2015, Bart Masters, the acting warden of FCI McDowell, submitted a request to the Designations and Sentence Computation Center ("DSCC"),[2] seeking to transfer Petitioner to a low security facility. (ECF No. 12-1 at 22). Warden Masters cited various factors in support of the transfer request, including the fact that Petitioner had not received any incident reports while at FCI McDowell. (*Id.*).

However, the following month, on August 17, 2015, Petitioner received an incident report for altering his government-issued pants and disobeying the order of a staff member to report to the laundry unit to obtain new pants. (ECF No. 2 at 6). The Unit Discipline Committee ("UDC") found him guilty of code violations for damaging or altering government property (Code 329) and failing to obey the staff member's order (Code 307). Petitioner appealed the UDC's decision by filing administrative remedy requests. (*Id.* at 8-11, 13-15). Respondent, who succeeded Mr. Masters as warden of FCI McDowell, partially granted Petitioner's administrative remedy request, finding that the Code 329 violation was supported by the evidence, but that the Code 307 violation was not. (*Id.* at 12). Petitioner unsuccessfully appealed Respondent's decision to the Regional Director. (*Id.* at 16-18).

---

[2] Sentence computation functions for the Federal Bureau of Prisons ("BOP") are carried out at the Designation and Sentence Computation Center located in Grand Prairie, TX. *See* https://www.bop.gov/inmates/custody_and_care/sentence_computations.jsp

On August 20, 2015, the DSCC denied Petitioner's lesser security transfer request, citing the incident report in the denial. (ECF No. 12-1 at 26). According to Petitioner's case manager, Christi Day, the following month, Petitioner's unit team evaluated him for placement in a residential reentry center ("RRC"), otherwise known as a "halfway house," under the Second Chance Act. (*Id.* at 19, 28). Considering the 18 U.S.C. § 3621(b) factors, Ms. Day recommended that Petitioner be placed in a RRC for 121 to 150 days. (*Id.*). However, Petitioner refused to sign the referral form unless the unit team agreed to change the recommendation to RRC placement for 12 months. (*Id.*). When his request was refused, Petitioner indicated that he would handle the matter through the courts. (*Id.* at 19-20, 28). Consequently, a referral was never generated. (*Id.* at 20).

On January 4, 2016, Petitioner filed the instant habeas petition, (ECF No. 1), and a memorandum in support, (ECF No. 2). Petitioner states that he was denied a transfer request due to the incident report and seeks relief under the Second Chance Act. (ECF Nos. 1, 2). He also attached to his memorandum various evidence relating to the incident report and background information regarding the Second Chance Act and RRC placement. (ECF No. 2 at 26-34).

Pursuant to a show cause order, Respondent filed a response seeking dismissal of the petition. (ECF No. 12). Respondent states that the petition should be dismissed because Petitioner never pursued, much less exhausted, his administrative remedies regarding the Second Chance Act or RRC placement. (*Id.* at 4-5). Further, Respondent argues that the petition should be dismissed because the Federal Bureau of Prisons ("BOP") fulfilled its statutory duties by making an individual RRC determination based upon the five factors in § 3621(b). (*Id.* at 7). Finally, Respondent asserts that to the extent Petitioner requests a transfer to a low security institution, that authority falls within the

broad discretion of the BOP. (*Id.* at 8).

In reply, Petitioner moved for an expedited ruling in this action, contending that the 12-month RRC placement that he sought "expired" on March 15, 2016. (ECF No. 15). He asserts that Ms. Day's own statements show that she independently decided to recommend him for only 121 to 150 days of RRC placement, which she was not authorized to do. (*Id.* at 2). He denies that he ever refused to sign a RRC document. (*Id.*). He also seemingly contends that he should have received the maximum allowable RRC placement of 12 months because he completed a non-residential drug abuse program. (*Id.*). Regarding exhaustion of administrative remedies, Petitioner claims that he filed "many, many BP-8's and BP-9 forms," which were also copied and sent to a Senator, Regional Offices, the Central Office, the Inspector General, and the DSCC. (*Id.* at 4). Petitioner claims that FCI McDowell operates by a "cover my back" motto, and that the administrative remedy process is a sham, with administrative remedy request forms and submitted exhibits often disappearing. (*Id.*).

Petitioner filed supplemental evidence and argument in support of his petition, which the court construes as a motion to supplement or amend his petition. (ECF No. 16). Notably, Petitioner pointed out that Respondent was to produce all relevant evidence, but failed to offer his RRC referral form or progress reports. (*Id.* at 7). Petitioner also filed several motions seeking an expedited ruling on his petition. (ECF Nos. 17, 18, 21, and 22). Petitioner contends that an "emergency ruling" is necessary because his father is expected to succumb to a terminal illness within a few months. (ECF No. 17). In further filings, Petitioner states that he recently "signed" for 151 to 180 days in a halfway house, which would result in his release sometime between September 13, 2016 and October 13, 2016. (ECF No. 21). He later states that his case manager recommended him for a term of four

months of RRC placement, which means that he would not begin RRC placement until November, 2016. (ECF No. 22). Based on the above, it is unclear precisely when Petitioner is scheduled to begin RRC placement, if at all, but under either scenario, Petitioner disagrees with the BOP's determination and contends that he needs to be placed in a RRC immediately. (ECF Nos. 21, 22).

## II. <u>Analysis</u>

For the reasons stated below, the undersigned finds that Petitioner's § 2241 petition must be dismissed for lack of exhaustion. Further, the undersigned finds that even if the court were to waive exhaustion, the petition is without merit.

### A. *Exhaustion of Administrative Remedies*

Generally, an inmate should exhaust adequate alternative remedies before filing a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723,782, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (an inmate must exhaust administrative remedies before filing a § 2241 petition) (citations omitted). Habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," but it is an "avenue of last resort." *Timms v. Johns*, 627 F.3d 525,531 (4th Cir. 2010) (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983)). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being hauled into court. *Arbaugh v. Berkebile*, No. CIVA 5:10-0528, 2010 WL 5481198, at *3 (S.D.W. Va. Nov. 8, 2010), report and recommendation adopted, No. 5:10-CV-00528, 2011 WL 9387 (S.D.W. Va. Jan. 3, 2011) (citing *Jones v. Bock,* 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *McCarthy v. Madigan,* 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

5

In this case, Petitioner contends that he exhausted his administrative remedies regarding the claims in his § 2241 petition because he filed and pursued administrative appeals regarding the incident report. (ECF Nos. 2 at 2, 15 at 4). However, Petitioner is incorrect. Although the incident report was a reason for denying Petitioner's transfer to a low security facility, an administrative challenge to the incident report did not, by extension, challenge the denial of his transfer. Moreover, it certainly did not challenge his unit team's decision regarding the Second Chance Act and RRC placement. By only presenting administrative remedy requests regarding the incident report, Petitioner limited administrative review to the discrete issues related to the incident report, such as whether the code violation charges were supported by evidence. (ECF Nos. 2 at 8-18, 10 at 2-8). According to the record before the court, Petitioner never presented any issues relating to the Second Chance Act or RRC placement through the Administrative Remedy Program. (ECF No. 12-1 at 5-16). Therefore, Petitioner precluded prison officials from reviewing and deciding upon those issues.

According to the record, Petitioner challenged the RRC recommendation of 121 to 150 days by stating to Ms. Day that he objected to the referral. (ECF No. 12-1 at 28). Arguably, this could serve to satisfy the first step of the administrative remedy process: informal resolution. 28 C.F.R. § 542.13. The next step would have been for Petitioner to file the appropriate form and bring his concerns to the attention of the prison warden. 28 C.F.R. § 542.14. Petitioner did not follow the administrative remedy process. Instead, Warden Johnson received a letter from U.S. Senator Durbin after Petitioner reached out to Senator Durbin for assistance regarding his Second Chance Act and RRC claims. (ECF No. 2 at 20-21). Moreover, Warden Johnson's response to Senator Durbin's inquiry evidences that he reviewed Petitioner's claims and found that Petitioner was properly

6

considered under the Act.

Even assuming *arguendo* that the court was to consider that Petitioner satisfied the initial steps of the Administrative Remedy Program, *see* 28 C.F.R. § 542.13, § 28 C.F.R. § 542.14, by virtue of his above actions, there is no evidence before the court that the Regional Director or General Counsel had the opportunity to review and decide upon the issues presented in this § 2241 petition, which are critical and final components of the Administrative Remedy Program. In fact, the evidence produced by Petitioner only shows that the Regional Director considered Petitioner's challenge to the incident report and demonstrates that he was not presented with any other claims. (ECF No. 10 at 2). The other evidence produced by Petitioner, including Petitioner's message to BOP staff and his correspondence to DSCC, all concerned the status of his lesser security transfer referral and likewise failed to present his Second Chance Act or RRC claims. (ECF No. 2 at 22, 24; ECF No. 10 at 11, 20). Further, in response to the foregoing correspondence, Petitioner was repeatedly instructed to contact institution staff to address the issues that he presented, but there is no evidence that he ever followed through on that instruction. (ECF No. 2 at 24; ECF No. 10 at 10, 20).

Petitioner's only reply to Respondent's claim that Petitioner failed to exhaust his administrative remedies is a vague assertion that he filed "many, many BP-8's and BP-9 forms." (ECF No. 15 at 4). Petitioner does not provide proof of such forms, nor does he verify that he raised claims related to the Second Chance Act and RRC placement in those forms. The only documentation provided by Petitioner concerning the Administrative Remedy Program concerns his challenges to the incident report. (ECF Nos. 2 at 8-18, 10 at 2-8). Additionally, the documentation produced by Respondent demonstrates that Petitioner did not file any administrative remedy requests regarding the issues presented

in this petition. *See* (ECF No. 12-1 at 5-16).

In an effort to account for the absence of evidence corroborating his claim that he exhausted his administrative remedies, Petitioner offers an unsubstantiated assertion that "BP-8's, BP-9's and even exhibits submitted in pleadings disappear," insinuating that such documents are removed from inmate files or court filings by prison staff. (*Id.*). Again, Petitioner does not offer a scintilla of evidence to support this accusation. To the contrary, the documentation submitted by Petitioner in this action undermines his argument. Petitioner was able to provide proof of his administrative appeals related to the incident report, as well as other supporting evidence, without having any document go missing. Petitioner does not offer any concrete facts regarding administrative appeals that he supposedly filed, nor does he describe evidence which is purportedly missing from his filings. In fact, Petitioner does not unequivocally state that he ever pursued administrative remedies regarding the issues presented in this petition, as opposed to the incident report. Therefore, the undersigned **FINDS** that Petitioner has not exhausted his administrative remedies regarding the claims presented in his petition.

The next issue for the court's consideration is whether to excuse exhaustion in this circumstance. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated that an inmate's failure to exhaust his administrative remedies before filing a § 2241 petition "may only be excused upon a showing of cause and prejudice." *McClung*, 90 F. App'x at 445. This court has excused a § 2241 petitioner's failure to exhaust his administrative remedies on the basis of futility. *Larue v. Adams*, No. 1:04-0396, 2006 WL 1674487, at *8–9 (S.D.W. Va. June 12, 2006); *see also Bost v. Adams*, No. 1:04-0446, 2006 WL 1674485, at *6-7 (S.D.W. Va. June 12, 2006). Other courts in the circuit have also excused exhaustion "when the actions of the agency clearly and unambiguously

violate statutory or constitutional rights or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (citing *Lyons v. U.S. Marshals,* 840 F.2d 202, 205 (3rd Cir.1988). In any event, exhaustion should only be excused "in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Id.* (quoting *Rose v. Lundy,* 455 U.S. 509,515–516 (1982)).

In *Larue* and *Bost*, the court found that it would be futile for a petitioner to be required to exhaust her administrative remedies because the ultimate appeal would be to the Office of General Counsel, the entity that issued the BOP policy that she was challenging. *Id.* In the foregoing cases, the court cited with agreement decisions of other circuits which stand for the proposition that exhaustion would be futile when, by some circumstance, it is almost certain that the petitioner will not receive a genuine opportunity for relief through the administrative remedy program. *Id.* In the instant action, Petitioner plainly has not established that his failure to exhaust should be excused on the basis of futility. While Ms. Day and Respondent apparently declined his challenges regarding his eligibility for 12 months of RRC placement under the Second Chance Act, there is no indication from any of the evidence in this matter that he would have received unfavorable responses from higher authorities within the BOP. *See, e.g., Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (Exhaustion can be granted on the basis of futility if the BOP is certain to rule adversely, but an unsupported prediction of failure does not excuse lack of exhaustion) (citing *Thetford Prop. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.,* 907 F.2d 445, 450 (4th Cir. 1990) ("Allowing a petitioner to avoid the administrative process based on a mere conclusory assertion 'would allow the futility exception to swallow the exhaustion.'")).

In addition, Petitioner has not provided any argument or evidence that the "administrative procedure is clearly shown to be inadequate to prevent irreparable harm." As noted, his claims that documents "tend to disappear" within the process and that FCI McDowell follows a "cover your back" motto are entirely unsupported. Indeed, the evidence reflecting FCI McDowell's handling of Petitioner grievance over the incident report proves the opposite. Petitioner filed administrative remedy requests regarding the incident report and prevailed in the dismissal of one of the charges against him. Consequently, Petitioner has shown no valid reason for circumventing the Administrative Remedy Program with his RRC claims. The court simply cannot excuse exhaustion every time an inmate incorrectly utilizes the Administrative Remedy Program, fails to understand the process, or simply bypasses the process altogether. To do so would undermine the effectiveness of the Program and the purpose of the exhaustion requirement. "Exhaustion allows the appropriate agency to develop a factual record and apply its expertise, which can facilitate judicial review." *Wright*, 2010 WL 1258181, at *1. It also "permits agencies to grant the relief requested, which conserves judicial resources and provides agencies the opportunity to correct their own errors, fostering administrative autonomy." *Id.* (citing *McCarthy v. Madigan,* 503 U.S. 140, 144–145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Moscato Fed. Bureau of Prisons,* 98 F.3d 757, 761–62 (3rd Cir.1996)).

Finally, as discussed in additional detail in the subsequent section of this PF & R, the undersigned has reviewed the merits of Petitioner's petition and finds that the BOP properly considered him for RRC placement under the Second Chance Act and further finds that the agency did not violate his statutory or constitutional rights. Therefore, the undersigned **FINDS** that Petitioner failed to exhaust administrative remedies regarding

his RRC placement, and neglected to provide the court with facts that would excuse or justify his failure to exhaust his administrative remedies.

### B. The Second Chance Act

In any event, even if the court were inclined to waive exhaustion in this case, Petitioner's § 2241 petition fails on the merits. Petitioner seeks relief under the Second Chance Act.[3] (ECF Nos. 1, 2, 3, 15). Although Petitioner's petition references, without much detail, the denial of his transfer to a low security facility, (ECF Nos. 1, 2), the documents attached to his initial pleading and his later filings make clear that his petition focuses on RRC placement. (ECF No. 2 at 26-34; ECF Nos. 3, 15, 16, 17, 21, 22). Petitioner alleges that he was not properly evaluated for RRC placement under the Second Chance Act and that he should have received 12 months of RRC placement; he asks that the court immediately release him to a RRC given that he has less than 12 months remaining before his release from custody. *Id.*

To the extent that Petitioner challenges the denial of his transfer to a low security facility, he does not present any viable claim that the agency violated his federal or constitutional rights. The BOP is given sole discretion to designate an inmate's place of imprisonment. Title 18 U.S.C. § 3621(b); *see, e.g., Arbaugh*, 2010 WL 5481198, at *4. "[A]n inmate has no constitutional right to be confined to a particular institution, *Meachum v. Fano*, 427 U.S. 215, 223 (1976), nor any 'justifiable expectation' that he will be confined in a particular prison. *Olim v. Waukinekona*, 461 U.S. 238, 245 (1983)." *Myers v. Williams*, No. 2:15-CV-49, 2015 WL 9304550, at *6 (N.D.W. Va. Dec. 21, 2015). Thus, Petitioner does not have a protected liberty interest in placement in a low security

---

[3] *See* https://www.bja.gov/ProgramDetails.aspx?Program_ID=90. The Second Chance Act was passed to reduce recidivism and facilitate the reentry of offenders into society when they are released from incarceration.

facility and a "decision regarding such placement is a matter of prison management." *Id.* Matters of prison management, such as designating where to house offenders, are issues that "courts are ill equipped to deal with" and "thus is a task for which the separation of powers doctrine counsels judicial restraint." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)).

If Petitioner seeks release to a RRC, he likewise is not entitled to any form of relief under the Second Chance Act. Title 18 U.S.C. § 3624(c), as amended by the Second Chance Act, provides that the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." *Id.* at § 3624(c); 2010 WL 5481198, at \*4-5. In considering inmates for pre-release community confinement, the BOP must consider five factors:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

18 U.S.C. § 3621(b); 28 C.F.R. § 570.22. The determination must be made on an

"individual basis" and the placement must be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 28 C.F.R. § 570.22."Despite a prisoner's eligibility for a placement of up to twelve months in an RRC, it is within the sole discretion of the BOP whether to place a prisoner in an RRC, and if so, for how long." *Garrison v. Stansberry*, No. 2:08CV522, 2009 WL 1160115, at *4 (E.D. Va. Apr. 29, 2009) (citing *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 251 (3rd Cir. 2005) (holding that the BOP must analyze the five factors in § 3621(b) and "that the BOP may assign a prisoner to [an RRC] does not mean that it must").

Despite Petitioner's various arguments that he qualified for 12 months of RRC placement, it is not within the province of this court to reevaluate or second-guess the BOP's decisions under the Second Chance Act. *See Douglas v. Stewart*, No. 2:11CV48, 2011 WL 4708785, at *6 (N.D.W. Va. Sept. 12, 2011), *report and recommendation adopted*, No. 2:11-CV-48, 2011 WL 4708781 (N.D.W. Va. Oct. 4, 2011) (citation omitted) (Stating that because judicial review is precluded, "any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court."). Here, the court's <u>only role</u> in reviewing the BOP's decision as to Petitioner's placement under the Second Chance Act is to determine whether the BOP properly reviewed Petitioner's case on an individualized basis and considered the five statutory factors. *See Garrison*, 2009 WL 1160115, at *4; *Myers v. Williams*, No. 2:15-CV-49, 2015 WL 9304550, at *6 (N.D.W. Va. Dec. 21, 2015); *Arbaugh*, 2010 WL 5481198, at *5. Congress specifically excluded §§ 3621 and 3624 from judicial review. *See Douglas*, 2011 WL 4708785, at *6 (citing *Davis v. Beeler,* 966 F.Supp. 483, 489 (E.D.Ky.1997)). Therefore, this court may only review "whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope

of its authority." *Id.* (citing *Webster v. Doe,* 486 U.S. 592 (1988); *Turner v. Safley,* 482 U.S. 78, 84 (1987); *Procunier v. Martinez,* 416 U.S. 396, 405 (1974); *Davis,* 966 F.Supp. at 489). Having considered the evidence, the undersigned finds that the BOP complied with its mandate.

Respondent produced a declaration of Petitioner's case manager, Christi Day, signed under the penalty of perjury pursuant to 28 U.S.C. § 1746. (ECF No. 12-1 at 18-20). According to Ms. Day, Petitioner's unit team considered him for RRC placement using the five § 3621(b) factors on September 29, 2015. (*Id.* at 19). Respondent also produced a page from Petitioner's Inmate Activity Record in which Ms. Day noted that her evaluation of Petitioner for RRC placement under the five factors resulted in a determination that RRC placement of 121 to 150 days was recommended. (*Id.* at 28). Petitioner does not provide any credible evidence to refute Ms. Day's declaration, or the contemporaneous notation in the Activity Record, that his case was properly considered under the Second Chance Act. He attempts to attack Ms. Day's credibility, arguing that her declaration is inconsistent, because Ms. Day first states that Petitioner's unit team considered him for RRC placement, and then later asserts that she made the RRC recommendation. The undersigned does not find Ms. Day's statements to be contradictory. Ms. Day's notation regarding the recommendation of 121-150 days was co-signed by another BOP staff member, indicating that Ms. Day did not make the determination alone. Furthermore, even if Ms. Day made the ultimate RRC recommendation following evaluation by the unit team, she clearly states that "the five factors were considered in the determination." (*Id.* at 19). Thus, there is no "clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority." *Douglas*, 2011 WL 4708785, at *6.

Petitioner also contends that Ms. Day advised him that staff at FCI McDowell refuse to submit anyone to RRC for more than 6 months. (ECF No. 3 at 1). Presumably, this comment stemmed from a BOP Program Statement, which provided that inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. *See Arbaugh*, 2010 WL 5481198, at *5. Regardless, a single, out-of-context hearsay statement offered by Petitioner does not persuade the undersigned that Petitioner received a categorical determination under the Second Chance Act. 28 C.F.R. § 570.21 (Stating that inmate must receive an individual determination). Ms. Day states in her declaration that the statutory factors were considered in Petitioner's specific case, and there is nothing in the record to cause the undersigned to question the veracity of her statement.

While it would have been helpful for Respondent to produce additional documentation of the BOP's analysis of the factors, such as the referral form or progress reports that Petitioner suggests, such documentation is not required to evaluate whether the BOP complied with the law in evaluating Petitioner for pre-release. The undersigned notes that Respondent did not produce the RRC placement referral paperwork, although it evidently exists. *See* (ECF No. 2 at 21) ("His Unit Team has completed the paperwork for his RRC placement"). However, Respondent was not required to produce such documents because, under the law, the court does not need to evaluate the BOP's findings regarding the factors; it only needs evidence that the factors were considered. *Douglas,* 2011 WL 4708785, at *6. Ms. Day's declaration serves as credible evidence that the factors were considered on an individual basis. Therefore, the undersigned **FINDS** that the BOP complied with the law in evaluating Petitioner for RRC placement, and, accordingly, Petitioner's petition is without merit.

### III.   <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1); Motion to amend/supplement the petition, (ECF No. 16); Motion for Emergency Ruling on the petition, (ECF No. 17); Motion to Seal, (ECF No. 18); Motion to Expedite, (ECF No. 21); and Motion for Disposition, (ECF No. 22), be **DENIED**;[4]

2. Respondent's request for dismissal of this action, (ECF No. 12), be **GRANTED**;

3. This action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

---

[4] Petitioner presented no grounds that would entitle him to a speedier resolution than any other petitions which were pending at the time that he filed his petition. Further, his petition is subject to dismissal for lack of exhaustion and failure to state a claim. Therefore, the undersigned did not separately address Petitioner's various motions for an expedited ruling.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:**  October 4, 2016

Cheryl A. Eifert
United States Magistrate Judge

17